## CIRCUIT COURT OF THE CITY OF RICHMOND

Eugene R. May et al.

v.

Rainsley Financial Corp.

February 28, 1994

Case No. LW-2616–3

BY JUDGE T. J. MARKOW

This matter is before the court on demurrer. In the motion for judgment, plaintiffs, business brokers, allege that in 1988 they introduced their client Figgie International, Inc., to G. W. Habb Company, Inc., for possible purchase of Habb by Figgie. Nelson, an employee of Figgie, learned of the opportunity to purchase Habb and initiated an attempt to purchase, using plaintiff Light-VanAusdall, Inc., for assistance. Light-VanAusdall introduced Nelson to defendant, Rainsley Financial Corporation, for assistance in financing the purchase by Nelson. There was no express contract amongst the plaintiffs and the defendant for the payment of any commission in connection with the first Habb-Nelson transaction. That effort failed.

Thereafter, the defendant, Rainsley, and the two plaintiffs entered a contract whereby they agreed to share any commission on a deal in which a new party, Barry Wehmiller Company, would purchase Habb. Nelson was to be hired as the Habb manager by Wehmiller. That deal, too, fell through.

Some four years later in 1992, Nelson, with defendant Rainsley's assistance, arranged to buy Habb. Rainsley received a commission of approximately thirty-five thousand dollars in connection with the sale. Plaintiffs claim entitlement to two-thirds of that commission under a theory of contract implied in law.

Plaintiff alleges that there was no express contract but claims that because of the express agreement to share a commission with the defendant in the Wehmiller-Habb deal it would be unfair for Rainsley

to keep the entire commission resulting from the benefit conferred on the defendant by the plaintiffs.

An action for a contract implied in law is to remedy an unjust enrichment. The concept is found in Virginia law as early as *Lawson v. Lawson*, 57 Va. (16 Gratt.) 230 (1861), discussing the comparison of the concept of assumpsit or an action to recover money of another had and received which the possessor had no right to retain with contract implied in law. In more modern times (1919), the Virginia Supreme Court agreed that the action has been extended to "all cases in which the defendant is bound by ties of natural justice and equity to refund the money . . . from the relation of the parties the law will imply a debt, and give this action, founded on the equity of the plaintiff's case, as it were, upon a contract — *'quasi ex contractu'* . . . and upon this debt found the requisite undertaking to pay." *Rinehart v. Pirkey*, 126 Va. 346 (1919), citing with approval *Clark on Contracts* (1894 ed.) § 314, p. 757.

> Ordinarily where one person renders services for another which are known to and accepted by him, the law creates an obligation, called an "implied promise," on his part to pay a reasonable compensation for such service unless there be something in the relation of the parties or the circumstances of the case which precludes the idea of such compensation . . . .

4B Michie's Jurisprudence, *Contracts*, § 100.

Generally it is for the fact finder to determine the factual circumstances, if they are in dispute, and apply them to the law given by the court to determine the existence and terms of contracts that are in dispute. However, if the facts are not in dispute but the existence or terms of a contract are disputed, it is for the court to render the decision. There is no authority whether it is a factual or legal question to determine one of the primary elements of a quasi contract action; *e.g.*, whether acceptance or retention of the benefit by the defendant would make it inequitable for the defendant to retain a benefit without paying for its value. *In re MBA, Inc.*, 51 B.R. 966 (E.D. Va. Bankr. 1985).

Where the facts are not in dispute, as on demurrer, this court is of the opinion it is the court's obligation to determine whether or not the facts, as a matter of law, imply a contract in law.

The primary issue here is whether the plaintiffs conferred any benefit on the defendant. Plaintiffs claim that they have in that they intro-

duced Nelson, the ultimate buyer, to the defendant some four years earlier when he was first trying to buy Habb. It is interesting to note that plaintiffs make much of the express contract between the parties involving the Wehmiller deal but there was no understanding about any commission in connection with the first Nelson attempt at the purchase.

Distilled to its essence, plaintiffs claim that they have rendered a valuable service merely by introducing Nelson to the defendant which ultimately resulted in a purchase. Their argument does not establish any causal connection between the two; *i.e.*, introduction and sale, except in the most philosophical sense. Nelson was not introduced to Rainsley for the deal that went through. He was introduced for a deal that may have worked four years earlier. There is nothing alleged to suggest that the first introduction was the beginning of an arduous, four-year process of negotiations between Nelson and Habb, with Rainsley's help. The Nelson deal that plaintiffs initiated died, indeed, it was replaced by the Wehmiller deal, which also died. There is no fact alleged that could allow a reasonable fact finder to find a causal connection between the introduction and the ultimate sale. As there is no operative nexus between the plaintiffs' alleged benefit and the sale, there is no mandate of equity, fairness and justice that mandates that Rainsley share its commission.

Additionally, the plaintiffs allege that defendant Rainsley was paid the commission for "its efforts in putting the transaction together." Earlier plaintiffs allege that it was Rainsley's function to assist the purchaser "with financing." In the express contract among these parties for the Habb-Wehmiller deal and which would have resulted in a commission, various duties were assigned the parties. The parties were to be paid for introducing buyer (Wehmiller) and seller (Habb) and to assist in the selling and negotiating efforts. To the extent their relationship with Rainsley was to produce a commission in the express contract, the plaintiffs were to perform significant services. Here they ask for two-thirds of the commission for a mere introduction to another deal four years earlier.

Defendant's review of the express contract would lead it to believe that it had commission involvement with the plaintiffs only if they reduced the agreement to writing and if all parties contributed to making the deal work. This is particularly true where there was no con-

tractual arrangement in connection with the first Habb-Nelson transaction.

Plaintiffs have failed to allege facts supporting a cause of action for a contract implied in law. There is no basis in equity to require defendant to share its commission. There would be no basis for an amendment to the motion for judgment; accordingly, upon sustaining the demurrer the action will be dismissed.